## BRYANT et al. v. MAHAN.

No. 18116. Opinion Filed Dec. 20, 1927.

Rehearing Denied March 20, 1928.

(Syllabus.)

1. **Trusts—"Express Trust"—"Resulting Trust."**

To constitute an "express trust" there must be some act, on the part of the cestui que trust, expressive of an intent to create a trust and to designate some one as trustee. A "resulting trust" arises where, from the condition of facts existing, regardless of any intent on the part of the beneficiary, the law presumes a trust.

The equity rule is that:

"Express trusts" "are generally created by instruments that point out directly and expressly the property, persons, and purpose of the trust; hence, they are called direct or express trusts in contradistinction from those trusts that are implied, presumed, or construed by law to arise out of the transactions of the parties." Perry on Trusts, vol. 1, sec 24.

2. **Same—Statutory Provisions.**

By article 4, ch. 77, C. S. 1921, the equity rule as to both "express trusts" and "resulting trusts" is enacted into law.

3. **Same—Resulting Trust by Operation of Law.**

Under the third subdivision of section 8462, C. S. 1921, a "resulting trust" may arise out of the facts and circumstances of a particular case by operation of law.

4. **Same—Application of Equity Rule.**

The facts and circumstances sufficient to create a "resulting trust" are not required to be identically the same in all cases. Wherever the facts and circumstances of the case clearly invoke the application of the rule as to "resulting trusts," it will be applied.

5. **Same—Parol Evidence to Establish Resulting Trust.**

A "resulting trust" is not within the statute of frauds, and may therefore be established by parol evidence.

6. **Appeal and Error—Conclusiveness of Findings as to Resulting Trust.**

Where the court's finding of facts sufficient to create a "resulting trust" is supported by the clear weight of the evidence, the judgment will not be disturbed.

Error from District Court, Seminole County; E. A. Summers, Judge.

Action by Rachel Mahan against A. J. Bryant and Dorothy Bryant. Judgment for plaintiff, and defendants being error. Affirmed.

Pryor & Stokes and Hugh Murphy, for plaintiffs in error.

Anglin & Stevenson and Forrest M. Darrough, for defendant in error.

HARRISON, J. This appeal is to reverse a judgment of the trial court in favor of defendant in error, Mrs. Mahan, wherein the court adjudged that plaintiffs in error, the Bryants, herein, held a deed to 80 acres of land, made to them by Mrs. Mahan, and that an undivided one-fourth interest in the oil, gas, and mineral rights in such land was held in trust by the Bryants for Mrs. Mahan, and further adjudged that the Bryants should execute a deed to Mrs. Mahan conveying her a one-fourth interest in the oil, gas, and mineral rights in said tract, also adjudging that the Bryants should pay Mrs. Mahan the sum of $500, the same being one-fourth of what Bryant had received for an oil and gas lease on said tract, sold after he had received the deed in question from Mrs. Mahan. In her petition in the court below, the plaintiff, Mrs. Mahan, alleged in substance, that at the beginning of the transactions involved she owned the 80 acres in question, which defendants desired to purchase, and which she

desired to sell. She wanted $3,000 for the 80 acres, exclusive of a one-fourth interest in the oil, gas, and mineral rights, she to reserve an undivided one-fourth interest in the oil, gas, and mineral rights, and though Bryant did not object, or at least it is not made to appear that he did object to this arrangement nor to the amount of the purchase price for the surface title, still he contended that he would have to obtain a loan on the land in order to pay the purchase price in cash and would not be able to borrow enough to make up the $3,000. She then proposed to take $2,500, she reserving 20 acres as an undivided one-fourth interest therein. This proposition appears likewise to have been acceptable to Bryant, or at least it does not appear that he made any objections to such proposition further than that he would have to obtain a loan and that if the deed on its face showed a reservation of one-fourth interest, it would be difficult to obtain a loan, and it was finally agreed that Mrs. Mahan give him a clear warranty deed to the entire tract without any · reservation, so that he could thereby obtain a loan, and that as soon as he procured the loan he would reconvey an undivided one-fourth interest in same to her. That she, relying on his promise and trusting to his integrity, believing that he would do what he had agreed and promised to do, executed and delivered a clear warranty deed to the tract without specifying any reservations. That after execution of the deed, which was placed in escrow with a bank, Bryant procured a loan and upon payment of the agreed purchase price, the escrow deed, a clear warranty deed containing no reservations, was delivered to him. Shortly thereafter, he sold an oil and gas lease on the 80 acres for $2,000, $25 per acre, and though often requested by Mrs. Mahan to reconvey the undivided one-fourth interest which he had promised to reconvey to her, and to pay her the one-fourth of the $2,000 which he had received for the lease, he refused to reconvey as he had promised and refused to pay her any part of the lease money, whereupon she brought this suit and recovered the judgment above mentioned.

The Bryants seek a reversal of such judgment on the following propositions, viz.:

(1) "The plaintiff alleges and bases her cause of action upon the creation and establishment of an express trust."

(2) "The agreement upon which the plaintiff bases her claim of an express trust was not in writing."

(3) "An express trust in lands must be created, manifested, and proved by a writing properly executed".

Upon these propositions the plaintiffs in error contend that Mrs. Mahan alleged an "express trust", based her right of recovery on the theory of an "express trust," and that the cause was tried in the lower court on the theory that it was an "express trust", and judgment rendered upon such theory. Wherefore plaintiffs in error contend that the alleged "express trust", not being in writing, cannot be enforced. The entire brief, reply brief, and supplemental brief of plaintiffs in error are in support of this theory.

If we should accept the theory of plaintiffs in error that it is an express trust involved, then we would feel compelled to sustain the position of plaintiffs in error, for it is ably presented and amply sustained by a decisive weight of authority. But we cannot sustain the contention that it is an "express trust" involved, nor that it was tried upon the theory of an "express trust", or judgment rendered upon such theory, but solely upon the theory of a "resulting trust".

In this connection it is well to observe the distinction between express trusts and those designated as resulting, implied, or constructive trusts. The dividing line between express trusts and resulting trusts, implied trusts, or constructive trusts was clearly drawn by this court in McCoy v. McCoy, 30 Okla. 379, 121 Pac. 176, wherein the court, after citing and quoting from the authorities, announced the following conclusion in paragraph 3 of the syllabus, to-wit:

"To constitute an express trust there must be some act on the part of the cestui que trust expressive of an intent to create a trust and to designate some one as trustee. A resulting trust arises where, from the condition of facts existing, regardless of any intent on the part of the beneficiary, the law presumes a trust".

In other words, "Express trusts"— "are generally created by instruments that point out directly and expressly the property, persons, and purpose of the trust; hence they are called direct or express trusts in contradistinction from those trusts that are implied, presumed, or construed by law to arise out of the transactions of parties". Perry on Trusts, vol. 1, sec. 24.

See, also, Bouvier's Law Dict.; Anderson's Law Dict.; Carter v. Gibson (Neb.) 45 N. W. 637, 26 Am. St. Rep. 387; Caldwell v. Matthewson (Kan.) 45 Pac. 615.

Our statutes on Uses and Trusts, article 4, chap. 77, provides:

Section 8457. "Uses and trusts, in relation to real property, are those only which are specified in this article".

Then, after the intervening provisions in sections 8458, 8459, and 8460, section 8461 provides:

"The preceding sections of this chapter do not extend to trusts arising or resulting by implication of law * * *"

Section 8462 provides:

"No trust in relation to real property is valid unless created or declared:

"First. By a written instrument, subscribed by the grantor or by his agent thereto authorized by writing.

"Second. By the instrument under which the trustee claims the estate affected; or,

"Third. By operation of law."

Thus it must be seen that an express trust may be created or declared by a written instrument under the first or second subdivisions above, or, under the third subdivision, a resulting trust may arise from or be created by the facts and circumstances of the case, by operation of law. See Ewing v. Ewing, 33 Okla. 414, 126 Pac. 811; J. I. Case Threshing Mach. Co. v. Walton Trust Co., 39 Okla. 748, 136 Pac. 769; Boyd v. Winters, 65 Okla. 141, 164 Pac. 781; Bobier v. Horn, 95 Okla. 8, 222 Pac. 238; Tolon v. Johnson, 104 Okla. 201, 230 Pac. 865; Moore v. Crawford (U. S.); 32 L. Ed. 878; 1 Perry on Trusts, sec. 166; Pomeroy, Eq. Jur., sec. 1053.

It will be seen from the above authorities what had long been the equity rule as to resulting trusts, and from the above statute it will be seen that the equity rule has been enacted into law in this state.

The court tried this cause upon the theory that by reason of the facts alleged and proved, the law created a trust, constructed a trust, and upon such theory the court rendered judgment decreeing that the deed held by the Bryants was held in trust, or at least an undivided one-fourth interest in the land was held in trust, for Mrs. Mahan, the grantor. In so holding, the court especially relied on and followed Bobier v. Horn, 95 Okla. 8, 222 Pac. 238; Tolon v. Johnson, 104 Okla. 201, 230 Pac. 865. It is contended by plaintiffs in error, however, that the Bobier Case and the Tolon Case, supra, are not in point nor even applicable to the case at bar, for the reason that the facts in each of said cases are different, and that the facts in neither of such cases are the same as the facts in the instant case. It is true that the facts in the instant case are different from those in either of the above cases, but the fact that the doctrine of resulting trusts was applied in both the above cases, and in many other cases,

each based upon a different state of facts, is conclusive that the facts are not required to be identical in all cases in order to create a resulting trust. See authorities above cited.

In Perry on Trusts, supra, it is said:

"If a person obtains the legal title to property by such arts or acts or circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances or relations".

In 3 Pomeroy, Eq. Jur., supra, the same rule is stated, and the author concludes:

"The forms and varieties of these trusts which are termed ex maleficio or ex delicto are practically without limit. The principle is applied wherever it is necessary for the obtaining of complete justice."

This rule was applied by the Supreme Court of the United States in Moore v. Crawford, supra, all of which authorities were followed, and the rule applied by this court in Ewing v. Ewing, supra. This rule has been followed by this court wherever the facts and circumstances have clearly justified its application, and the abstract principle, to-wit:

"Resulting trusts are those which arise where the legal estate in property is disposed of, conveyed or transferred, but the intent appears or is inferred from the terms of the disposition or from accompanying facts and circumstances that the beneficial interest is not to go to or be enjoyed with the legal title. In such case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner." (J. I. Case Co. v. Walton, 39 Okla. 748, 136 Pac. 769)

—and the supporting principle that:

"Resulting trusts are not within the statute of frauds, and may therefore be established by parol evidence, where not otherwise incompetent"

—have both been followed by this court since they were so clearly announced in J. I. Case Threshing Mach. Co. v. Walton Trust Co., supra, and both of which have recently been reiterated in Bobier v. Horn, and Tolon v. Johnson, supra, which controlled the trial court in the instant case.

While the court did not find that a fiduciary relationship existed between plaintiff and defendants, for in fact there was no such relationship shown, yet in view of the fact that defendant Bryant was related by marriage and his wife related by blood to plaintiff,

Mrs. Mahan, who was then advanced in years, and the fact that Mrs. Mahan had known defendant Bryant for ten or twelve years and had known his wife possibly since her birth, had lived neighbor to them and regarded them with a feeling of kinship and affection, had come to regard Bryant as a member of her family of relatives and respected and trusted him as a man of honor and truth, and being glad to assist him and his wife in procuring themselves a home, confidently believing he would do what he promised to do, she executed the deed without any expressed reservations, relying upon his honor and believing in his word that he would reconvey her a one-fourth interest in the oil and gas rights. In view of these facts, which, in our opinion, are supported by the clear weight of the evidence, the trial court was right in applying the rule as to resulting trusts, and right in the judgment rendered.

Judgment affirmed.

BRANSON, C. J., and MASON, PHELPS, LESTER, HUNT, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 39 Cyc. pp. 24, 25, 26, 44, 57, 104, 105; 26 R. C. L. pp. 1179, 1214; 5 R. C. L. Supp. pp. 1441, 1446. (2) 39 Cyc. 44, 57. (3) 39 Cyc. pp. 104, 105. (4) 39 Cyc. p. 168 (Anno). (5) 39 Cyc. pp. 108, 109, 155; 26 R. C. L. p. 1230; 5 R. C. L. Supp. p. 1447. (6) 4 C. J. p. 877, §2853; 39 Cyc. p. 160.