Jennie FIFE, now Featherston, and Clint Featherston, her husband, et al., Plaintiffs in Error,

v.

Exie FIFE, now Shelton, Defendant in Error.

No. 37302.

Supreme Court of Oklahoma.

Dec. 18, 1956.

Harland A. Carter, Okmulgee, for plaintiffs in error.

Anthis & Gotcher, Muskogee, for defendant in error.

CARLILE, Justice.

Exie Fife, now Shelton, instituted this action in 1955 against Jennie Fife, now Featherston, and other parties to cancel two deeds executed by her to Jennie Fife, et al., conveying certain land in McIntosh and Muskogee Counties, and to quiet plaintiff's title to the land as against the claims of the defendants.

Jennie Fife Featherston and Clint Featherston, wife and husband, filed an answer asserting that Jennie Fife Featherston was the owner and held title to a one-third interest in the land, subject to a life estate in favor of plaintiff, and prayed judgment accordingly. Judgment was rendered for the plaintiff and the defendants, Jennie Fife Featherston and Clint Featherston, were the only parties who have appealed. The husband, Clint Featherston, did not assert any title to the land and the issue involved in this appeal is solely between the plaintiff, Exie Fife Shelton, and the defendant, Jennie Fife Featherston. The parties will be referred to as they were in the District Court.

The plaintiff, Exie Fife Shelton, alleges in her petition that she is a full blood Creek Indian; that on April 13, 1931, she owned in fee simple the certain land here involved, which land was restricted against alienation except upon approval of the Secretary of the Interior of the United States; that on said date, at the direction of and with the approval of the Secretary of the Interior, she executed and delivered warranty deeds conveying the said land, subject to a life estate therein reserved by her, to Timmie Fife and Charles Benjamin Fife, her brothers, and Jennie Fife, her sister, all of whom were full blood Creek Indians; that Charles Benjamin Fife died in 1944, and in 1947 his heirs were determined in an action in the County Court of McIntosh County; that the said deeds executed by plaintiff were executed and delivered without any consideration, and by reason thereof the deeds should be cancelled and the defendants adjudged to have no title or interest in the real estate.

Plaintiff further alleges that the purpose of the execution of the said deeds was to convey the land to the grantees in trust, for the use and benefit of the grantor, plaintiff herein; that the purpose of the trust has long since disappeared and the said deeds should be canceled and plaintiff adjudged to be the owner in fee of the described premises, and that defendants be adjudged to own no title or interest therein, and that plaintiff's title be quieted and confirmed as against any claims of defendants.

The defendant, Jennie Fife Featherston and Clint Featherston, assert in their brief filed herein that plaintiff neither alleged nor proved a cause of action, and say that no fraud was alleged or proven against defendants.

"Fraud is not an essential element in establishing a resulting trust." Trimble v. Boles, 169 Okl. 228, 36 P.2d 861, 862.

The defendant, Jennie Fife Featherston, did not allege in her answer that the deeds in question were made by plaintiff with an intent to defraud creditors, but she does refer to certain testimony in the case and asserts and argues in her brief that both the plaintiff and the Bureau of Indian Affairs were not acting with "clean hands" in that they transferred the land for the purpose of placing it beyond the reach of judgment creditors, and now seek to place the land back in plaintiff's name. She relies on the case of Rust v. Gillespie, 90 Okl. 59, 216 P.2d 480, which announces the rule that a court of equity will not lend its aid in any manner to one who has been guilty of unlawful or unequitable conduct in a transaction from which he seeks relief. Where the facts and circumstances warrant such rule has been followed by this court. The evidence relied on by the answering defendant as showing unequitable conduct on the part of the grantor is the testimony of Mr. Tidwell, who testified that at the time of the transaction he was an employe, Supervising Federal Clerk of the Indian Department, and supervised the transaction

pertaining to the execution of the deeds in 1931. The following testimony of the witness on cross-examination is incorporated in the brief of defendant, Jennie Fife Featherston:

"By Mr. Carter: Q. Well, Mr. Tidwell, the court asked you what was the purpose of transferring land belonging to Exie Fife to her brothers and sisters—were there judgments against her? A. Exie, along about that time, was being sued by everybody that could sue her—she was unfortunate.

"Q. Did you discuss with Exie transferring this property? A. I can't recall whether we discussed it or not, but it was at our request that she transferred this property to her brothers and sisters.

"The Court: You say that it was to keep it away from her creditors, is that the idea?

"The Witness: No, you misunderstand me. If it was determined this was not restricted land, which at that time we figured it might not be after April 26, 1931, then it would be subject to any judgments against her. Then there was lots and lots of people who sued her on most anything to get a judgment against her, and they would levy on this property."

▇ The limited testimony and the facts and circumstances shown are insufficient from which fraud may be implied, or a fraudulent intent on the part of the grantor presumed. The evidence does not meet the requirements of the holding or rule announced in the case of Jones v. Jones, Okl., 290 P.2d 757, 758, as follows:

"Where plaintiff, in a suit to quiet title, alleges ownership of the equitable title, although he had conveyed the naked legal title to another, and the heirs of the grantee, as defendants, rely upon their assertion that the grantor is not in a position to maintain the suit in equity because he had executed the deed to hinder and defraud creditors, the burden of proving the fraudulent intent of the grantor is upon them.

"Where, in a suit to quiet alleged equitable title as against holders of legal title, defendants, to defeat plaintiff's right to equitable relief, rely upon 'clean hands' doctrine by assertion that deed from plaintiff to defendants' predecessor was in fraud of creditors, it must be shown that the grantor was insolvent when the conveyance was made."

In the present action no proof is shown from which it may be said that the grantor, Exie Fife, was insolvent at the time of the conveyance, nor do we consider the evidence sufficient to warrant a finding that the transaction was fraudulent.

The witness Tidwell, on direct examination, was asked:

"Q. Will you tell the Court the purpose of that deed? A. This deed was given by Exie Fife to Charles Benjamin Fife, Timmie Fife and Jennie Fife for the purpose of retaining the restrictions on this land.

"Q. What do you mean by that? A. Well, the deed that she bought the property on had a clause in it whereby on April the 26th, 1931, the restrictions would expire on that land —that is the land mentioned in this deed.

"Q. How was this land in her name? Was it an allotment or a purchase? A. No, sir, it was purchased land. * * *."

He also stated that he knew of his own personal knowledge that there was no consideration passed for the deed. The court asked:

"Why, Mr. Tidwell, would Exie Fife be concerned about losing the restrictions on this land? Why did she care?

"The Witness: I don't think it was so much Exie as it was the Department.

"The Court: She made this deed at the urging or request of the Department?"

"The Witness: Yes, sir."

Henry Nicholson, a witness, testified that in 1946 he was employed as Federal Representative for the Indian Services, and that he had knowledge of the execution in February, 1946, of two deeds executed by Charles McClure, Timmie Fife and Jennie Fife, parties in the present action, for the purpose of conveying the land in question back to Exie Fife Shelton, the plaintiff. The deeds were admitted in evidence and the witness testified that they had been in the custody of the Land Department of The Five Civilized Tribes, and that the deeds had not been approved by the Secretary of the Interior. He was asked if he knew the reason why they had not been approved and answered:

"Well, if I remember correctly the deeds were sent in to our supervising field man at the office, who was Mr. Perkins—we had a reduction in force in July of 1947 and Mr. Perkins' position was abolished but he handled all of these matters in connection with forwarding the deeds to Washington for approval. The position was abolished and the deeds stayed in the files and they were never taken out."

The plaintiff, Exie Fife Shelton, testified that she signed the deeds in favor of her brothers and sisters, but did not remember why she executed them; that she did not remember whether she talked to Mr. Tidwell about signing the deeds, and stated that she had been to see Jennie about getting the land back, but did not remember what Jennie said.

Jennie Fife Featherston was questioned by the court and testified that she was about 14 years of age in 1931; that she did not know why Exie transferred the land to her; that she first found out about it about ten years ago. She said she signed the deed back to Exie in 1946 because Exie and Charlie McClure came to see her where she was working and said they wanted it signed back and she did so because Exie asked her. Jennie was asked by the Court if she thought she owned the land and answered:

"That is for you to decide."

The record discloses that the plaintiff, through the Indian Bureau, had leased or rented the land for the plaintiff, and that she personally collected the rentals thereon and paid accruing taxes.

"In an action of equitable cognizance, judgment of trial court will not be disturbed on appeal unless it is against clear weight of the evidence." Jones v. Jones, supra.

■ We have reviewed and considered the evidence and record in this case and do not find the judgment of the trial court to be against the clear weight of the evidence. Judgment affirmed.